UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

SHEILA LYNN MILLER,         )
         )
    Plaintiff,        )        No. 5:17-CV-456-REW
         )
v.         )
         )        OPINION AND ORDER
NANCY A. BERRYHILL, Acting         )
Commissioner of Social Security,         )
         )
    Defendant.        )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Sheila Miller appeals the Acting Commissioner's denial of her application for Disability Insurance Benefits and Supplemental Security Income (collectively, "benefits"). The parties filed dueling summary judgment motions. The Court **GRANTS** Acting Commissioner Berryhill's motion (DE #22) and **DENIES** Miller's motion (DE #19) because substantial evidence supports the findings resulting in the administrative decision, and the decision rests on proper legal standards.

I.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Miller is currently 48 years old. *See, e.g.*, R. at 84. She alleges disability beginning on October 4, 2012. *See* R. at 15, 84, 101, 316, 333. Miller applied for benefits in early 2014. R. at 15, 84, 101, 316. The SSA denied her claims initially on July 16, 2014, *see* R. at 143-51, and upon reconsideration on October 14, 2014. *See* R. at 161-67. Miller then filed a written request for a hearing on October 20, 2014. R. at 173-74. Administrative Law Judge (ALJ) Ronald M. Kayser held hearings on the applications on February 1, 2016, and July 11, 2016. R. at 54-81, 1554-86. At the hearings, attorney

Matthew Shupe[1] represented Miller. R. at 56, 1554. Claimant testified on February 1, R. at 1556-86; an impartial vocational expert (VE) and a "medical expert," Dr. Richard M. Anderson, testified on July 11, R. at 56-80; *see also* R. at 417-19. The ALJ subsequently denied Miller's claims on October 3, 2016. R. at 15-36. The Appeals Council denied review and thus upheld the ALJ's decision on September 20, 2017. R. at 1-3.

The ALJ made several particular findings in the required sequence. He determined that Miller did not engage in substantial gainful activity from October 4, 2012, through October 3, 2016, the date of decision. R. at 18. The ALJ next determined that Miller has seven severe impairments. *Id.* However, ALJ Kayser then found that Miller did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. at 19. The ALJ further made a detailed residual functional capacity (RFC) finding. R. at 21-34. Although ALJ Kayser found Miller "unable to perform any past relevant work," the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Miller] can perform[.]" R. at 34-36. Based on all these considerations, the ALJ ruled that Miller was not "under a disability . . . from October 4, 2012, through the date of th[e] decision," October 3, 2016. R. at 36. Unsatisfied with the result of the SSA's administrative process, Miller turned to federal court for review.

---

[1] The ALJ identified Paulette F. Balin as counsel in the written decision, R. at 15, but the transcripts indicate Mr. Shupe attended the hearings. *See also* R. at 220.

## II.     ANALYSIS

### A.     *Standard of Review*

The Court has carefully read the ALJ's decision, the transcripts of the administrative hearings, and the entire administrative record (which, similar to the ALJ's remarks, is "one of the biggest files" the Court has encountered, R. at 56, spanning nearly 1,600 pages). The Court has scrutinized the record, while primarily focusing on the portions to which the parties specifically cite. *See* DE #11 (General Order 13-7), at ¶ 3(c) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.").

Judicial review of the ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th

Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Acting Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the ALJ's decision if substantial evidence supports it, even if the Court might have decided the case differently if in the ALJ's shoes. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110. At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Id.* At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Id.* At Step 4, the ALJ determines RFC and whether the claimant can perform past relevant work. *Id.* The inquiry at this stage, as to past work, is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden shifts to the Acting Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4). If the ALJ

determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to his interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).[2]

B.      The ALJ did not reversibly err.

Miller's overarching argument is that the ALJ "erred when he failed to evaluate the numerous opinions of record regarding Plaintiff's impairments and limitations in accordance with Agency policy and Sixth Circuit precedent." DE #19-1, at 3. Miller "assemble[s]" the alleged errors "into two categories," which the Court considers in turn.

---

[2]      The "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. Jan. 3, 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010) ("[T]he same legal standards and sequential evaluation process is employed for making the disability determination regardless of whether an application is for DIB or SSI.").

Further, the Court, in this Opinion, applies the regulations in effect at the time of the administrative decision, as Miller seeks. *See* DE #19-1, at 5 n.1. Acting Commissioner Berryhill does not request otherwise. The Court does, though, disagree with (although it does not ultimately matter, given the Court's treatment of the issues) Miller's call for "plenary" judicial review "with respect to all questions of law." *Id.* at 3. Neither authority she cites established such a standard. *See Whiteside*, 834 F.2d at 1292 ("[T]he scope of this court's review is *not*, as both parties have instructed the court, 'de novo.'" (emphasis in original)).

1.      Error concerning "evidence that the ALJ failed to acknowledge *at all*"

The Court can quickly dispatch Miller's argument concerning this category. Claimant contends that "the ALJ clearly erred by failing to even *mention*" proof from Dr. Theophilus Arthur-Mensah and "a determination by the medical review team for Kentucky Works." DE #19-1, at 4-7 (emphasis in original); *see also id.* at 6 (phrasing argument as one targeting an alleged failure to "at least acknowledge probative evidence of record," which the ALJ allegedly "clearly did not do").

This argument—simply that the ALJ erred by not mentioning the record proof from Dr. Arthur-Mensah and Kentucky Works—is factually wrong. Judge Kayser *did* mention and acknowledge this evidence. *See* R. at 31 ("In October 2014, the claimant began receiving mental health treatment from Theophilus, Arthur Mensah, M.D., and his staff." (all as in original)); R. at 33-34 ("In this case, multiple medical sources and even other government agencies opined that the claimant was effectively disabled. . . . The [ALJ] considered these opinions and gave them little weight." (citing Exhibits 29F (Arthur-Mensah),[3] 43F (Arthur-Mensah), 63F (Kentucky Works Medical Review Team),[4] 92F (Mendoza), 93F (Arthur-Mensah), and 94F (Arthur-Mensah))). Miller, no doubt, would have preferred the ALJ to consider and weigh the proof differently, but her argument of rank non-consideration is plainly incorrect.[5]

---

[3] As to Arthur-Mensah, the only specific page Miller cites is 987. *See* DE #19-1, at 6. This page is included in Exhibit 29F, which the ALJ explicitly considered.

[4] As to Kentucky Works, the only specific page Miller cites is 1309. *See* DE #19-1, at 6. This page is included in Exhibit 63F, which Judge Kayser explicitly considered.

[5] To the extent Miller attempts to argue alternatively that the ALJ did not "evaluate [these pieces of evidence] consistent with the regulations and Sixth Circuit precedent," DE #19-1, at 6, she utterly fails to develop this argument in any meaningful way. She states no specific basis for the generalized contention. The Court thus holds any such argument forfeited. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues

2. Error concerning "evidence that the ALJ failed to evaluate consistent with the authority the Agency has promulgated . . . and Sixth Circuit precedent regarding such"

Miller's second category of alleged error concerns evidentiary treatment where Claimant acknowledges ALJ consideration but contends such assessment did not accord with applicable law. *See* DE #19-1, at 7-23. Miller specifically targets Judge Kayser's treatment of the proof from five medical providers: Drs. Jose E. Mendoza, Erin D. Stephens, Daniel O. Lee, James C. Owen, and Arthur-Mensah. *Id.* at 8-12.[6] Claimant includes various sub-arguments relative to the ALJ's evaluation of the medical proof, which the Court considers in turn.

In "deciding the weight [to] give to any medical opinion" in this context, the ALJ "consider[s]" several factors. *See* 20 C.F.R. 404.1527(c). "The ALJ need not perform an exhaustive, step-by-step analysis of each factor; []he need only provide 'good reasons' for both h[is] decision not to afford the physician's opinion controlling weight and for h[is] ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017)*, cert. granted on unrelated sub-issue sub nom. Biestek v. Berryhill*, 138 S. Ct. 2677 (2018);[7] *Blakley*, 581 F.3d at 406-07; *Rogers v. Comm'r of Soc. Sec.*, 486

---

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (internal alterations removed)); *Howard v. City of Girard*, 346 F. App'x 49, 52 (6th Cir. 2009) (citing cases); *United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999); *Buziashvili v. Inman*, 106 F.3d 709, 719 (6th Cir. 1997). Miller is clear that "the **entire premise** of [her] argument is that the ALJ is required to at least acknowledge" this proof, DE #19-1, at 6 (boldface added; other emphasis removed), which the record plainly shows Judge Kayser did.

[6] Miller later drops distinct consideration of Arthur-Mensah. DE #19-1, at 16 (limiting analysis to "Lee, Owen, Mendoza, and Stephens"). The Court follows suit.

[7] As the Acting Commissioner argues, DE #22, at 6-7, *Biestek* resolves many of Miller's discrete complaints concerning Judge Kayser's consideration of the § 404.1527 factors. *See* DE #19-1, at 14-15 (arguing the ALJ did not textually consider factor (c)(2)); *id.* at

F.3d 234, 242 (6th Cir. 2007) ("[T]he ALJ must provide 'good reasons' for discounting

treating physicians' opinions, reasons that are 'sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight.'"). Good reasons are "specific reasons for the

weight given to the treating source's medical opinion, supported by the evidence in the

case record, and must be sufficiently specific to make clear to any subsequent reviewers

the weight the adjudicator gave to the treating source's medical opinion and the reasons

for that weight." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 544 (6th Cir. 2004).

Miller first makes an abbreviated and confusing argument concerning a full-time

work requirement. *See* DE #19-1, at 12-13. This argument appears to be predicated on the

Court agreeing with Claimant's substantive record analysis, to which the Court soon

turns. *See id.* (conditioning argument on whether ("if") the "opinions of the treating and

examining sources" Miller emphasizes are "credited").[8] If Miller, however, more

generally asserts that a sit/stand/walk for "6 hours in an 8-hour workday" limitation

"mak[es] it impossible to work 'full-time' pursuant to the Agency's definition," *see id.* at

---

15 (arguing the ALJ did not textually consider factor (c)(5)); *id.* at 15-16 (arguing the
ALJ did not textually consider factor (c)(4)). Contrary to Miller's argument, remand is
not required when an ALJ does not "analyze all of the relevant § 404.1527 factors" one-
by-one in the written decision. DE #19-1, at 16; *id.* at 14 (clarifying that the argument
concerns only the ALJ's alleged failure "to acknowledge or discuss" certain factors);
*Biestek*, 880 F.3d at 785 (so holding). The ALJ simply need not march through each
factor "step-by-step." *Id.* Instead, the ALJ "need only provide 'good reasons'" for the
weighing of medical opinions. *Id.* Judge Kayser affirmed multiple times that he
considered "the entire record" and "all symptoms," *see, e.g.*, R. at 21-22, 34, and
specifically certified (and fairly demonstrated) that he considered the evidence "in
accordance with the requirements of 20 CFR 404.1527[.]" R. at 22 (as in original).

[8] As do Miller's throwaway observations that an RFC must "accurately describe all of the
practical effects of all the claimant's impairments" and that a VE's testimony must be
based on an accurate RFC. *See* DE #19-1, at 13 (emphases removed). Miller fails to
develop these ideas separately or with specificity, aside from the various record
evaluation criticisms the Court separately addresses (and rejects).

13; *see also* R. at 21 (ALJ making such an RFC finding), the argument strains credulity.

The ALJ found that Miller can do *each* of these things independently for 6 out of 8 hours,

not that there would be two hours each day in which Miller could not sit, stand, *or* walk.

*See* R. at 21 ("stand **and** walk for six hours in an eight hour workday" (emphasis added));

*id.* (after semicolon: "can sit for six hours in an eight hour workday"); *Rudd v. Comm'r of*

*Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) (affirming denial of benefits with same

restriction as part of RFC).

Turning to Miller's specific complaints concerning the ALJ's record evaluation,

Claimant "[b]egin[s] first with the ALJ's rejection of Dr. Lee's opinion regarding

Plaintiff's migraine headaches[.]" DE #19-1, at 16-17. The ALJ reasoned:

> In March 2016, Daniel Lee, M.D. evaluated the claimant for migraines
> headaches and other symptoms. Dr. Lee noted that despite complaints of
> migraines that the claimant's orientation, attention and language were
> normal. Additionally, Dr. Lee noted normal coordination as well as
> normal gait and station (Ex. 78F) The [ALJ] considered this evidence and
> noted that while the claimant has complained of debilitating headaches
> that occur frequently the medical evidence does not fully support the
> claimant's allegations. As noted above, although the claimant has
> underwent extensive testing, no etiology for headaches has been
> determined. Additionally, the medical evidence shows that the claimant
> had went significant periods without being treated by a specialist for
> headaches and without presenting to the emergency department. Further,
> the claimant's testimony did not indicate that she has to spend long
> periods in dark rooms or engage in other coping behaviors that would be
> expected with the frequency and magnitude of headaches alleged. . . .
>
> Dr. Lee opined that the claimant would miss work about three days per
> month and would need unscheduled breaks two times per week for one to
> two hours. Dr. Lee also opined that the claimant was likely to have good
> and bad days and that the claimant experienced three to four headaches per
> week. (Ex. 79F) The [ALJ] gave little weight to these opinions as they
> appeared to be based solely on the claimant's subjective allegations as
> opposed to objective medical evidence. [M]ultiple medical diagnostic
> scans, including MRIs and CT scans, did not indicate any etiology for
> recurring headaches. Additionally, Dr. Lee's own notes indicated that the

claimant displayed normal orientation, memory, attention, and language during examinations. (Ex. 78F)

R. at 28-29 (all as in original).

Judge Kayser's treatment here easily passes muster under substantial-evidence review. He stated good reasons—quoted above—to give Lee's evaluation the afforded weight. *See also* R. at 27 (citing exhibits). Miller's sole contrary argument concerns the "subjective complaint" reasoning above. *See* DE #19-1, at 16. That was, as an initial matter, but one of the good reasons the ALJ gave for discounting. Regardless, substantial record evidence—which is, remember, less than a preponderance—supports the ALJ's assessment. *See* R. at 1425 (Lee noting: "no vomiting"; "no paresthesias, no vertigo and no weakness"; "good compliance with treatment, good tolerance of treatment"); R. at 1425-26 (normal survey of systems); R. at 1427 (physical exam as described by ALJ); R. at 1431 (Lee explicitly relying on Miller's subjective allegations: "Patient . . . reported"; "She report"; "Reported that"; "She'll report"; "She finds"); R. at 1433 (physical exam as described by ALJ). "A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule." *Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009)).

"Turning to Dr. Owen's opinion," Miller attacks the ALJ's assessment of internal inconsistencies in the consultative examiner's findings. DE #19-1, at 17-18. The ALJ explained that he

gave little weight to Dr. Owen's opinions for several reasons. First, the opinions are inconsistent. Dr. Owen opines that the claimant has no objective evidence indicating limitations in lifting, handling, or carrying objects, but also opines that the claimant could only lift 20 pounds occasionally, would experience numerous postural limitations, and would have significant limitations in her ability to stand and walk. Additionally, Dr. Owen's findings do not support the level of limitation expressed.

> Specifically, Dr. Owen noted that the claimant's strength, sensation, and coordination appeared to be within normal limits. Dr. Owen also noted that the claimant demonstrated 5/5 heel and toe walk. Dr. Owen also noted that the claimant was able to sit down in a chair without any difficulty. (Ex. 73F) These observations do not support the limitations opined by Dr. Owen.

R. at 29 (all as in original); *see also* R. at 24-25 (also discussing Owen).

As above, this explanation undoubtedly supplies the "good reasons" warranting a discount of Owen's opinions. Plaintiff's disagreement with this evaluation centers on the ALJ's assessment that Owen's objective findings were inconsistent with his central opinions.[9] As Judge Kayser noted, Dr. Owen's evaluation documents do contain the inconsistencies described. *See* R. at 1370-83. For instance, Owen's "review of [Miller's] systems [wa]s essentially completely positive." R. at 1371. Despite Owen "see[ing] no objective evidence that would preclude her lifting, handling, [and] carrying objects," R. at 1372, he simultaneously opined that, *e.g.*, Miller could **never** lift or carry (*i.e.*, was precluded from lifting or carrying) a 21-pound object. R. at 1378. Despite Dr. Owen perceiving a "minimal[]" effect on Miller's "traveling," R. at 1372, he later opined that she could walk only for 10 minutes at a time, and for 1 hour in an 8 hour day. R. at 1379. Despite Dr. Owen noting Miller's "marked show of discomfort," R. at 1375, Claimant exhibited 5/5 heel and toe walk. *Id.* The ALJ provided good reasons, supported by substantial evidence, to discount Owen's internally inconsistent opinions. A reasonable reading of Owen's assessment was, indeed, "that the claimant retained the ability to perform a range of light exertional work ability." R. at 25.

---

[9] Miller's first argument—that it legally impermissible for an ALJ to reject a medical opinion based on internal inconsistencies—is quite obviously wrong. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2013) (recognizing that "inconsistencies . . . in medical opinions" can be grounds for rejecting reliance on them). It is the ALJ's role to evaluate the proof submitted, and he need not close his eyes to a doctor abdicating his role and observing one thing but opining another.

Claimant next challenges Judge Kayser's evaluation of Drs. Mendoza and Stephens. DE #19-1, at 19-20. These two providers feature prominently throughout the reasoning undergirding the ALJ's RFC determination. *See* R. at 25-26 (Mendoza), 26 (Stephens), 26-27 (Mendoza), 28-29 (Mendoza), 29 (Stephens), 30 (Mendoza), 32 (Mendoza). The Court declines to reprint every word of the ALJ's thorough, multi-faceted analysis concerning these doctors.[10]

ALJ Kayser stated good reasons for assigning the afforded weight to each provider's opinions. Miller's contrary argument is quite limited—that the ALJ did not properly evaluate record (in)consistencies. *See* DE #19-1, at 19.[11] Judge Kayser's careful treatment, though, easily suffices on substantial-evidence review. He noted specific instances of internal inconsistencies, as well as lateral inconsistencies among the other relevant medical proof, all of which the record reasonably buttresses. *See, e.g.*, R. at 25-32, 456-58, 474, 478, 568, 589, 657-65, 671-74, 695-96, 701, 712-13, 736-45, 751-52,

---

[10] To address an argument Miller raises, *see* DE #19-1, at 14-15, a "treating physician's opinion will not be given controlling weight unless it is well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). The ALJ explicitly acknowledged this. R. at 33. Judge Kayser engaged in a proper and adequately specific "good reasons" analysis on that front. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009).

[11] Claimant spills much ink concerning the ALJ allegedly ignoring certain *consistencies* in the record. First, this is simply wrong. The ALJ said so, certifying that he considered the evidence "in accordance with the requirements of 20 CFR 404.1527," R. at 22, which include contemplation of a medical opinion's "consistency . . . with the record as a whole." § 404.1527(c)(4). Second, the argument also is, quite obviously, beside the point. An ALJ perhaps could have found substantial evidence to give greater weight to Mendoza and Stephens, but this ALJ found substantial evidence to the contrary. The Court's review is deferential to the view the administrative judge took. *Warner*, 375 F.3d at 390. That is, the Court reviews the analysis actually undertaken, not the analysis Claimant wishes had been. *See Tweedle v. Comm'r of Soc. Sec.*, 731 F. App'x 506, 508 (6th Cir. 2018) ("In arguing that the ALJ did not consider the record as a whole, Tweedle for the most part highlights only the evidence that supports his claims for benefits, which is not the proper inquiry.").

759, 772, 831-42, 916-18, 939-40, 946, 1098-1100, 1122, 1238-39, 1248, 1283, 1289, 1328, 1476, 1507.[12] These constitute, contrary to Miller's argument, good reasons for the ALJ's weighing of these doctors' opinions. The Court has considered the full record[13] and concludes that the ALJ was sufficiently justified in assessing Mendoza and Stephens as he did.[14]

---

[12] Miller's discrete complaint that "no examining or treating source opinion supports the ALJ's RFC," DE #19-1, at 19-20 (emphasis removed), leads to no relief. No single medical source is alone necessary or conclusive in determining RFC; thus, an opinion from a non-examining consultant may be the basis for the ALJ's opinion, even if it conflicts with an examiner's. *See Blakley*, 581 F.3d at 409; *Gayheart*, 710 F.3d at 379 ("To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians."); *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'"); *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) ("To be sure, the ALJ's decision to give greater weight to [a consultant's] opinion was not, in and of itself, error.").

[13] The Court may, of course, consider pieces of record evidence "even if the ALJ failed to cite" them. *Heston*, 245 F.3d at 535. An "ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). Here, Judge Kayser affirmed that he carefully considered "all the evidence" and "the entire record" in evaluating disability and formulating Miller's RFC. R. at 16, 21, 34.

[14] In January 2014, Dr. Dhruv Patel provided a pithy summary of what ALJ Kayser, to a large extent, perceived during his own record review: "Remarkable for a stroke in 2012 which was never notable on the MRIs, she [Miller] has had residual weakness of the left side which we are not seeing." R. at 712; *see also* R. at 752 (Patel: "Lightheadedness without any true features of brainstem ischemia."); R. at 869 (Dr. Norman Sese: "She was following up with a neurologist, had admissions to the hospitals and had multiple MRIs of the brain but did not really show anything subsequently in our hospitals here."); R. at 968 ("Occupation: trying for disability"); R. at 1170 ("Chief Complaint: frustrated at repeated denial of disability claim"); R. at 34 (ALJ cataloguing Miller's "repeated occurrences of amplification of symptoms").

Stephens, for example, was of the contrary, obvious outlier view that Miller could work zero—literally "none"—hours per day, could not stand or sit for more than 15 minutes, and was altogether precluded from lifting objects. R. at 1328. [Mendoza's view was similar. R. at 1533-34.] Judge Kayser reasonably assessed the entire record and discounted such extreme opinions—expert judgment other record nuances vindicate. *Compare, e.g.*, R. at 1543-45 (Dec. 2014, stating drastically: "She is basically nonfunctional."), *with, e.g.*, R. at 1507 (June 2016, showing marked improvement: "Pt.

Finally, Miller trains her legal fire on ALJ Kayser's assessment of Dr. Linda Hall's opinion. DE #19-1, at 20-21. The ALJ "gave significant weight to the opinions of" Dr. Hall, a "state agency medical consultant." R. at 30. Providing numerous specific examples, the ALJ determined that Hall "adequately accounted for the claimant's impairments." *Id.* Miller argues that Hall, given the comparative timing, could not have reviewed Dr. Owen's opinion, and contends that this sequencing renders reliance on Hall's opinion unsound—that "it is simply impossible to tell what Dr. Hall would have opined had she reviewed the significant amount of evidence entered into the record subsequent to her review[.]" DE #19-1, at 20 (emphases removed).[15]

An ALJ is "entitled to assign significant weight to the opinions from . . . medical consultants despite the fact that they did not review all of the medical records." *Carter v. Astrue*, 886 F. Supp. 2d 1093, 1111 (N.D. Iowa 2012); *accord Cook v. Astrue*, 629 F. Supp. 2d 925, 932-33 (W.D. Mo. 2009) (refusing to adopt "a per se rule that failure to send medical records to be reviewed . . . automatically results in the opinion of that doctor not being entitled to substantial weight").

Here, of course, the ALJ himself thoroughly considered and accounted for Owen's post-Hall evaluation and still found Miller not to be disabled. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010) ("Even if Dr. Hernandez's [(a state-agency consultant's)] RFC was completed without knowledge of [certain medical] issues, however, the record reflects that the ALJ considered them."). The ALJ came to

states that she is doing really well at this time. She reports that she has been able to go to 3 stores since last visit, which is huge for her!").

[15] To the extent Miller complains that Hall's opinion is from "*two years prior* to the ALJ's decision," DE #19-1, at 19 (emphasis in original), the Court bears in mind that Miller claimed to be disabled *as of 2012*. Medical proof from 2014 is clearly relevant.

If Miller intended this argument to be broader than Owen-centric, she makes no other reasoned contention, forfeiting the possible claims. *McPherson*, 125 F.3d at 995-96.

that conclusion via a comprehensive review of all proof, finding that Hall "adequately accounted for [Miller's] impairments." R. at 30. Miller does not identify any specific reason Hall reviewing Owen's later opinion would have changed Hall's own take—Claimant's argument is merely a procedural, sequencing one.

The argument fails. When the ALJ explicitly considers the disputed piece of medical proof (here, Owen's opinion) and Claimant identifies no specific reason that the proof would have changed an earlier evaluation's conclusions, there is no error in assigning significant weight to the consultant's prior conclusions. *Ealy*, 594 F.3d at 513; *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (affirming decision where "state agency physicians' opinions . . . did not account for changes in [the claimant's] medical condition" but where the ALJ "considered the medical examinations that occurred after [the] assessment . . . and took into account any relevant changes in [the claimant's] condition").

Further, the Court has independently reviewed the Hall and Owen evaluations. They, indeed, appear essentially consistent with one another. *Compare* R. at 120-40*, with* R. at 1370-72. For example, Hall characterized Miller as being able to occasionally lift and / or carry 20 pounds (and frequently carry / lift 10); Owen, for his part, agreed that Miller was not "preclude[d]" from lifting and carrying items. The Court certainly perceives nothing so obviously inconsistent between the doctors' evaluations to support a notion that Hall being able to review Owen's evaluation would have altered her own opinion. [Further, the ALJ ordered Owen's opinion only for a limited purpose—it was "a neurological and an orthopedic consult examination to see what your condition of your hands and . . . this vertigo stuff is[.]" R. at 1583. Hall reviewed plenteous medical records

in rendering her opinion, R. at 121-29 (listing items), and Miller's physical and vertiginous concerns were no medical secret.] The ALJ, confronting multiple opinions and assessments from a variety of care providers, measured the overall proof in a reasonable manner, rationally accounted for the Hall and Owen reports, and rested his conclusions on substantial evidence.[16]

As this discussion reveals, ALJ Kayser displayed easy currency with a truly voluminous, medical-record-heavy case and expertly applied the SSA's sequential disability determination process to reach a defensible administrative result as to Ms. Miller. He comprehensively reviewed the medical proof, resulting in a 14-page, single-spaced RFC assessment (and 22-page overall disability determination)—the most thorough such evaluation the Court has seen. While the Court has focused this Opinion on Ms. Miller's particular complaints, the Court notes that the record is replete with substantial material supporting the ALJ's conclusions, as he capably documented and the

_____

[16] Miller tacks on a concluding argument that the ALJ improperly "did the one thing that is not permitted, namely rely on his lay analysis of the raw medical data to deny benefits." DE #19-1, at 22. ALJ Kayser did nothing of the sort. The Court does not doubt that it would be improper for an ALJ to "succumb to the temptation to play doctor and make [his] own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009), but Judge Kayser, by probing the monstrous record for consistencies *and* inconsistencies and weaving in contextual analysis of Miller's voluminous and long-term medical history, carefully avoided that very temptation here. He, certainly, reasonably saw no need for *additional* record supplementation, given the two hearings, additional evaluation ordered, and nearly 1,600 pages already accumulated. *See, e.g.*, *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010); *Foster v. Halter*, 279 F.3d 348, 355-56 (6th Cir. 2001). Contrary to Claimant's argument, the ALJ's task obviously is to "assess[] the medical evidence supplied in support of a claim," *Rogers*, 486 F.3d at 242, an undertaking Judge Kayser ably completed here. *See also Simpson*, 344 F. App'x at 194 ("The ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw his own inferences. . . . In weighing medical expert opinions, the ALJ is required to consider their quality and, thus, should consider the qualifications of the experts, the opinions' reasoning, their reliance on objectively determinable symptoms and established science, their detail of analysis, and their freedom from irrelevant distractions and prejudices." (internal quotation marks removed)).

Acting Commissioner contends. *See, e.g.*, R. at 21-34 (citing exhibits throughout), 57-73, 93-100, 133-40, 643-46, 671-74, 703-05, 767-71, 869-72, 933-40, 982-85, 1010-11, 1035-36, 1047, 1054-55, 1105, 1113-15, 1122-23, 1170-78, 1188-90, 1264, 1271, 1274-77, 1295-1300; other pages cited *supra*. As Judge Kayser summarized, he formulated an RFC "supported by the medical evidence, the medical opinions of the state agency medical consultants, the medical opinions of Dr. Anderson, and the evidence presented regarding the claimant's treatment history." R. at 34.

To be sure, as in many SSA appeals, portions of the record perhaps also support a pro-disability conclusion. This, in many ways, though, betrays Miller's plain and fundamental misapprehension of the Court's role in this inquiry. Especially confronting an administrative decision of this volume and quality of reasoning, it is simply not for this Court to step into the ALJ's shoes, try the case *de novo*, or re-weigh the evidence to come to an independent determination of Miller's disability status. *Bass*, 499 F.3d at 509; *Longworth*, 402 F.3d at 595; *Warner*, 375 F.3d at 390. Rather, the Court affirms the administrative decision as long as substantial evidence supports it, even if substantial evidence also could support a contrary finding. *Id.* Here, engaging in such deferential review, the Court affirms Judge Kayser's thorough, well-reasoned, factually supported, and legally sound decision to deny benefits.

## III. CONCLUSION

For the reasons stated, the Court **GRANTS** DE #22 and **DENIES** DE #19. The Court will enter a separate Judgment.

This the 24th day of February, 2019.



Signed By:

*Robert E. Wier*

**United States District Judge**